DECISION
Anthony A Nunes, Inc., ("Nunes") brings this action for damages against the American Automobile Association ("AAA") claiming it is due over $153,000 for work done, overhead and profit in the building of AAA's new facility in South Attleboro, Massachusetts in 1989.
The parties relationship began in late 1988, when AAA hired Eckman, Arp Snider ("Eckman") as its architects to construct the new facility. Because AAA wanted to be in their new facility by September of 1989, Eckman simply created a preliminary design of the facility and put out a bid package based solely upon the preliminary design. In February of 1989 Nunes submitted a general cost/plus 9% overhead, 4% profit bid without an estimate of the project based upon Eckman's preliminary design. After meetings with Eckman and a review of the incomplete plans and specifications, Nunes submitted an estimate for construction costs of between $450,000 to $500,000, subject to any changes made by Eckman and/or AAA to the plans and specifications.
On March 7, 1989 AAA chose Nunes as general contractor. AAA knew at that time that Nunes' bid was based on incomplete plans. During the month of April, Eckman provided updated drawings and design specification to Nunes. Nunes in turn developed a preliminary construction budget. At each interval, Nunes' estimates were based on a cost/plus payment method. Because Eckman and AAA regulated the design and modifications to the design of the facility, AAA had complete control to monitor and manage the construction budget.
On May 5, 1989 Nunes provided AAA with an estimated construction budget of $596,000 to complete the job, based upon the latest version of Eckman's design and specifications. In response, AAA requested by letter that Nunes stop work until adjustments were made to the plans and specifications to bring the estimated project costs down to below $550,000. However, in order that AAA could meet their deadline and be in their new facility by September, Nunes was told by AAA's representative to continue working and that the cost would be worked out. Consequently, the work on the facility was never stopped.
In response to AAA's budget concerns, Nunes provided a list of proposed changes, which if implemented, would reduce the cost to approximately $487,000. This figure did not include the cost for the drainage or fire alarm system, both of which had not been designed by Eckman nor approved by AAA at that time and therefore could not be priced and included in the estimate.
The project continued, although final plans involving the cost saving changes proposed by Nunes were not forthcoming. Between July and September of 1989 the project underwent significant design change. Namely, in July, preliminary drawings of the drainage system, along with other changes, were presented to Nunes. Upon review of the latest changes, Nunes informed Eckman that the estimated cost of the project would increase to roughly $516,000, as long as additional changes were not made and all of the cost savings measures proposed by Nunes in May were implemented.
Delays in the project began in late August when AAA had failed to obtain the required sewer and drainage permit from the State of Massachusetts. Moreover, other added costs were caused by AAA's failure to provide complete plans to Nunes in a timely manner. Also, the drainage system as approved by the State was substantially different from the system first designed and proved much more costly. This dramatic increase in cost from the original design to what was eventually installed also affected the fire alarm system.
In November of 1989, AAA moved into the facility, although some site work could not be finalized until spring. The final costs of the project, as tallied by Nunes, was $637,000.
Nunes now claims he is owed the difference between $483,000, what AAA has paid, and $637,000 the final costs of the facility. No allegations have been made that the facility suffers from any construction deficiencies. In fact, it would seem that AAA is very pleased with the design and construction of their new facility.
The dispute concerns whether or not the parties negotiated a gross maximum price ("GMP") that Nunes was not to exceed. Nunes argues that the bid was submitted and approved on a simple cost/plus 9% overhead, plus 4% profit and that these were the only terms to the parties agreement as to cost of the project. AAA agrees to the cost/plus agreement, but states that the cost/plus was subject to a GMP of $486,831. AAA's position is that the GMP of $486,831 was agreed to by Nunes in May of 1989, that it was based upon Nunes' job estimate, and that Nunes was well aware of the GMP and AAA's not-to-exceed budget of $550,000.
At the heart of the problem is that there is no written contract between the parties.[1] When Nunes was hired in March of 1989, the drawings, plans and specification consisted of a one-page general specification sheet, a general floor plan and an elevation drawing. From this scant information, no fixed value or GMP could be provided. Therefore, as of March of 1989, both parties simply had an agreement to construct the facility in South Attleboro. Consequently, Nunes proposed a cost/plus method of payment, wherein Nunes billed AAA monthly his costs plus 9% for overhead and 4% for profit. AAA paid these invoices, in full, each month without question until September.
Although Nunes was aware that AAA had a budget for the facility, Nunes did not control the costs of the project, AAA and Eckman did. AAA approved the plans Eckman created prior to Nunes' construction. Consequently, any increase in price as reflected in Nunes' estimates, was due to the increase in material and labor as the design and specifications were created and/or altered. Nunes alerted AAA to these changes when he submitted revised estimates based upon the updated drawings and specifications designed by Eckman.
Nunes argues that he is entitled to the full amount billed to AAA based on the agreement between the parties. In the alternative, Nunes states that if this court finds no agreement between the parties, that he should still be awarded the amount he claims he is owed based on a quasi-contract or quantum meruit theory. Nunes' second theory of recovery need not be addressed because the testimony and exhibits in evidence clearly demonstrate that an agreement existed between the parties.
Contracts which result from words are described as "express contracts," while contracts that result from conduct are described as "implied in fact contracts." The distinction has no legal consequences. Farnsworth on Contacts, Farnsworth, E. § 3.10; Boland v. Catalano, 202 Conn. 333, 521 A.2d 142 (1987). The essential elements of either type of contract is a mutual agreement and an intent to promise. The difference is that in an express contract the agreement and promise are made in words, whereas in an implied in fact contract, the agreement and promise are presumed from the parties acts.
In the instant case, neither party denies that the parties had an agreement. Rather, the dispute centers on whether the agreement contained a GMP as a limit placed by AAA upon Nunes.
This court finds no such GMP restriction as being within the contemplation of the parties even though it had been mentioned by AAA. A GMP may have been in the minds of and desired by some AAA officials but the actions of those directly responsible, dealing with Nunes do not support this position.
It is clear that AAA, through its various representatives never verbalized acceptance of the various specifications and change estimates made by Nunes. However, the evidence gives rise to the reasonable inference that for whatever reason, most probably its desire to occupy the new building by its target date, that AAA in fact accepted Nunes' pricing terms: by paying each cost/plus invoice in full every month through September 1989; by failing to inform Nunes that it did not wish to proceed on a cost/plus basis; by failing to require Nunes to resubmit invoices on a different basis; by failing to inform Nunes of AAA's "not-to-exceed" budget as the completion date came near that the project was coming in over budget.
AAA had the opportunity to and did monitor progress and was the final party responsible for controlling costs during the design and construction of the project. AAA had the opportunity as well as the responsibility to review the designs and monthly statements along with the periodic estimates submitted by Nunes based on the latest designs. Armed with all this information and control, it is absurd for AAA to now claim that it had agreed to a GMP with Nunes, and that it was up to Nunes to have the project come in at that price especially since certain increased costs were due in large part to the delays occasioned by AAA's failure to secure the necessary permits in a timely fashion. Consequently, the court finds that Nunes is entitled to recover from AAA the total amount it claims to be due which was supported by competent and probative evidence at trial.
Nunes submitted evidence of actual costs for materials, labor, subcontractors, equipment and various miscellaneous itemized costs totalling $563,311.26. Nunes invoiced AAA that amount, plus $74,127.27 in overhead and profit, for a total of $637,438.53. AAA has paid $484,331.00 towards these charges. Therefore, the balance due Nunes is $153,107.53.
Plaintiff shall submit an appropriate order and judgment for entry.
[1] Nunes did submit a form of contract to AAA and AAA never responded because, as Shaw testified, by the time the form came back from AAA's lawyers, AAA did not want to slow the project down by entering into contract negotiations.